| | |
|---|---|
| ROBERT T.E. LANSING, et al., | |
|       Plaintiffs, | |
|     v. | |
| GEORGE CARROLL and GW CARROLL VI LLC, | |
|       Defendants. | |
| and | No. 11 CV 4153 |
| GEORGE CARROLL and GW CARROLL VI LLC, | Judge Manish S. Shah |
|       Counter-Plaintiffs, | |
|     v. | |
| ROBERT T.E. LANSING, REALTY PORTFOLIO HOLDINGS LP, MICHAEL COULTER SMITH, as trustee of CELEBRATE LIFE TRUST, RICHARD J. STEPHENSON, et al., | |
|       Counter-Defendants. | |

## MEMORANDUM OPINION AND ORDER

Robert Lansing and George Carroll created a real-estate investment business. When their relationship soured, each of the partners attempted to buy out the other. But neither attempt went smoothly, and the parties ultimately became embroiled in litigation: Lansing filed a breach-of-contract claim against Carroll, and Carroll brought a series of counterclaims against Lansing and others, including a

man named Richard Stephenson. Carroll, as it turns out, had made several remarks about Stephenson and the Stephenson family to a few investors when contacting the latter about the buyout. Stephenson filed a counterclaim against Carroll for defamation, and Carroll moved to dismiss. For the reasons discussed below, Carroll's motion is granted.

## I.     Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint need not include specific facts, but it must provide the defendant with fair notice of what the claim is, and the grounds upon which it rests. *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1098–99 (7th Cir. 2015) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must present enough factual matter, accepted as true, that the claim to relief "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In considering a motion to dismiss under Rule 12(b)(6), the district court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the (counter-)plaintiff's favor. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (quoting *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010)).

## II.     Facts

At bottom, this case is about a business divorce between two individuals, Robert Lansing and George Carroll. The details of their dispute are set forth in an

earlier ruling. [197].[1] For the purpose of resolving the present motion, however, a brief review is helpful.

Lansing and Carroll created together a real-estate investment business. Each owned an equal number of shares in the business, though the two co-owners worked out of different offices. (Lansing managed operations in Illinois, while Carroll took the helm in California.) Ultimately, however, the relationship soured, and in November 2010 Lansing exercised the "buy/sell" provisions in the business' governing agreements. Pursuant to those provisions, Lansing offered both to buy Carroll's shares and to sell to Carroll Lansing's own shares for approximately $14.5 million. Carroll chose to buy Lansing's shares, thus accepting the "sell" portion of Lansing's offer. But the closing date for the sale came and went, and Carroll was unable to raise the money necessary to complete the transaction.

A flurry of action ensued. Lansing sued Carroll for breach of contract, then purported to take control of Carroll's shares by executing (unilaterally) a transfer agreement. Carroll then filed a series of counterclaims based on the alleged conversion of his interests, including a claim against Lansing for fiduciary breach, and a claim against Richard Stephenson for aiding and abetting that breach. Stephenson, according to Carroll, could be held liable under an aiding-and-abetting theory because it was he who had designated a certain trust (Celebrate Life Trust) as the funding source for the allegedly-unlawful purchase of Carroll's shares. After

---

[1] Citations to the record are designated by the document number as reflected on the district court's docket, enclosed in brackets; referenced page numbers are from the CM/ECF header placed at the top of filings.

Stephenson's motion to dismiss the counterclaim was denied, Stephenson filed an answer and his own counterclaim (against Carroll) for defamation. *See* [240], later amended at [254].[2]

Stephenson claims that when Lansing invoked the buy/sell provisions in November 2010, and Carroll elected to buy Lansing's shares rather than to sell his own, Carroll began to reach out to investors over e-mail about raising the funds to make the purchase. Although the ostensible purpose of the e-mails was to obtain money for the buyout, Stephenson contends that in reality the messages served an alternative objective: to destroy Lansing's and Stephenson's reputations by spreading falsehoods about them. *See* [254] at 60 ¶¶ 4–5; *id.* at 64–65 ¶¶ 25–28. Stephenson claims that Carroll defamed him by making the following (false) statements about Stephenson to two different investors:

> (to Eliot Wadsworth) that "Steve Graver at Graver Capital Management . . . brought us the Stephensons, and then terminated the relationship after he found out they were crooks";
>
> (to Wadsworth) that "I [Carroll] will meet with [Lansing] . . . tomorrow . . . to discuss some possible solutions that will a) save his reputation; b) facilitate the transfer; c) reduce the likelihood of him roaming the streets of Lake Forest with his worldly possessions in a grocery cart; d) allow me to get rid of and him [*sic*] to take advantage of the unsavory Stephenson people . . . .";
>
> (to Wadsworth) that Lansing had drifted to the "dark side," and that "[g]iving more money in the form of debt to [Lansing] at this point would be like giving a case of vodka to an alcoholic";

---

[2] Stephenson's amended answer and counterclaim, as well as the briefs submitted in support of or in opposition to this motion, were filed under seal. To the extent this opinion discusses any content previously filed under seal, the party that originally filed that document must file on the court's docket a public version of the same. The public version should leave visible any content referenced below. *See City of Greenville, Ill. v. Syngenta Crop Protection, LLC*, 764 F.3d 695, 697 (7th Cir. 2014).

(to Wadsworth) that Lansing's investment project with Stephenson amounted to "deceit";

(to Jack Humphreville) that "Stephenson appears to be the type that likes to control things. I wouldn't be surprised if they eventually thought they could squeeze Lansing out"; and

(to Humphreville) that "[t]he patriarch [of two other companies] is Richard J. Stephenson. Google him for more information. . . . You can be sure any guy with assets in Switzerland and [the Virgin Islands] has absolutely nothing to hide."

*Id.* at 65–66 ¶¶ 30(a)–(f) (citing Exhibits A through F to the counterclaim, [254-1] at 1–27). Stephenson also listed in his counterclaim a series of statements in which Carroll allegedly accused Lansing of fraud. *See id.* at 66 ¶¶ 31(a)–(g).

Carroll moved to dismiss the defamation claim on the ground that it fails to state a proper claim to relief. [246].

## III. Analysis

In Illinois[3], defamation is "the publication of any statement that 'tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with [him].'" *Madison v. Frazier*, 539 F.3d 646, 652–53 (7th Cir. 2008) (quoting *Seith v. Chicago Sun-Times, Inc.*, 371 Ill.App.3d 124, 861 N.E.2d 1117, 1126 (2007)). To succeed on a defamation

---

[3] This is a diversity action: Stephenson is a citizen of Illinois, while Carroll is a citizen of California. *See* [254] at 60–61 ¶¶ 7–8. The parties agree that Illinois law governs Stephenson's defamation claim, *see* [248] at 2; [262] at 3, and it is appropriate to apply Illinois law in this instance, *see Kamelgard v. Macura*, 585 F.3d 334, 341–42 (7th Cir. 2009) (explaining that in modern-day defamation cases it makes sense to apply the law of the plaintiff's domicile, because "[t]hat is where the principal injury from a defamation will occur"); *see also Madison v. Frazier*, 539 F.3d 646, 652 (7th Cir. 2008) (applying in a defamation case the substantive law of Illinois, "the state in which th[e] diversity case was filed" (citing *Global Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 981 (7th Cir. 2004)).

claim, the plaintiff must prove: (1) that the defendant made a false statement concerning the plaintiff; (2) that there was an unprivileged publication of the defamatory statement to a third party; and (3) that the plaintiff suffered damages as a result. *Id.* at 653 (citing *Seith*, 861 N.E.2d at 1126); *see also Green v. Rogers*, 234 Ill.2d 478, 491 (2009) (citing *Krasinski v. United Parcel Service, Inc.*, 124 Ill.2d 483, 490 (1988)). In certain cases, however, a plaintiff need not prove actual damages in order to recover because the statements "are so obviously and materially harmful" to the plaintiff's reputation that his injury may be presumed. *Madison*, 539 F.3d at 653 (quoting *Bryson v. News America Publ'ns, Inc.*, 174 Ill.2d 77, 672 N.E.2d 1207, 1214 (1996)) (internal quotation marks omitted). Such statements are considered defamatory *per se*. *Id.*; *see also Green*, 234 Ill.2d at 491 (explaining that a statement is defamatory *per se* "if its harm is obvious and apparent on its face." (citing *Owen v. Carr*, 113 Ill.2d 273, 277 (1986)). If a statement is not defamatory *per se*, it is defamatory *per quod*, and the plaintiff must allege special damages with particularity in order to proceed with his claim. *See Madison*, 539 F.3d at 653 (citation omitted).

Illinois considers five categories of statements to be defamatory *per se*—two of which Stephenson argues are relevant here, *see* [262] at 13–14: (1) words that prejudice a party (or impute a lack of ability) in his trade, profession, or business; and (2) words that impute the commission of a criminal offense, *see Bryson*, 174 Ill.2d at 88.

### A. Prejudice in a Profession or Business

Stephenson contends that of the six statements listed above, four are defamatory *per se* because they are harmful on their face to Stephenson's business reputation. The statements allegedly falling into this defamation-*per-se* category are: Carroll's statement to Eliot Wadsworth that Lansing had drifted to the "dark side"; Carroll's description (also to Wadsworth) of Lansing's project with Stephenson as one involving "deceit"; Carroll's reference to the Stephensons as "unsavory" people; and Carroll's statement to Jack Humphreville that Stephenson "appears to be the type that likes to control things." *See* [262] at 14.

In Illinois, even a statement that might otherwise be considered defamatory *per se* is not actionable as such if, when viewing the statement in context and giving to its words their natural and obvious meaning, the statement may reasonably be interpreted: (1) in an innocent (non-defamatory) way; or (2) as referring to someone other than the plaintiff. *See Solaia Tech., LLC v. Specialty Publ'g Co.*, 221 Ill.2d 558, 580 (2006) (citations omitted). Whether a statement is reasonably capable of an innocent construction is a question of law that the court may decide. *See Madison*, 539 F.3d at 654 (citing *Knafel v. Chicago Sun-Times, Inc.*, 413 F.3d 637, 640 (7th Cir. 2005); *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 607 N.E.2d 201, 207 (1992)). Here, neither the statement to Wadsworth about Lansing going to the "dark side," nor the statement about Lansing engaging in "deceit," is actionable *per se* because each may reasonably be interpreted to refer to someone other than Stephenson.

The first of these two statements is a response by Carroll to an e-mail from Wadsworth, in which Wadsworth stated (to both Carroll and Lansing):

> I have spent a lot of time listening to you both . . . . I cannot but suspect that both of you, with the bulk of your net worth tied up in these funds . . . , are experiencing issues of personal liquidity and I, for one, would be quite willing to be part of a loan accommodation which would relieve the short term pressure on you . . . .

[254-1] at 10–11. Carroll answered:

> This buy-sell was triggered by [Lansing], among other reasons, to disguise actions by him that were contrary to our Business Code of Conduct . . . and our investor LP agreements. . . . The real reason, I believe, for [Lansing's] drifting to the "dark side" are his own money problems and obsession with living beyond his means. . . . Your offer of a loan is gracious, but I don't need a loan. Giving more money in the form of debt to [Lansing] at this point would be like giving a case of vodka to an alcoholic."

*Id.* at 8. The natural and obvious meaning of this statement is that Carroll is accusing Lansing of behaving inappropriately (*i.e.*, by breaking certain of the partners' business agreements) in order to accommodate the latter's personal spending habits. Carroll says that *Lansing* drifted to the "dark side" in order to cover up "actions *by him* that were contrary to" the partners' agreements. *Id.* (emphasis added). On its face, and even when viewed in context of the larger discussion, the comment does not address Stephenson or his conduct at all. Thus, it cannot be defamatory *per se*.

Stephenson urges that the statement does refer to him because it concerns Lansing's business relationship with Stephenson—and thus, in the larger context of the current litigation (in which Carroll has alleged in his counterclaim that Stephenson aided and abetted Lansing's purported fiduciary breach), the comment

is actionable *per se*. *See* [262] at 8. The specific claims and allegations set forth in the parties' present legal dispute are "facts" extrinsic to the above communications. As such, those facts cannot be used—at least not in support of a claim for defamation *per se*—to provide context that Stephenson argues is otherwise missing from the comments themselves. *See Dubinsky v. United Airlines Master Exec. Council*, 303 Ill.App.3d 317, 323 (1999) (explaining that a statement is defamatory *per se* only if "extrinsic facts are not needed to explain it" (citing *Schaffer v. Zekman*, 196 Ill.App.3d 727, 731 (1990))). Because it is not clear from the face of Carroll's comment that he is referring to Stephenson, the comment cannot properly support Stephenson's claim of defamation *per se*. (Indeed, even if extrinsic facts could be used to fill in contextual gaps, Stephenson could not in this instance rely on the fact of Carroll's counterclaim against Stephenson. Carroll did not file his counterclaim until 16 months after he made the above statement to Wadsworth. *Compare* [254-1] at 8 (sent on January 9, 2011) *with* [41] (filed May 29, 2012).)

Carroll's next statement to Wadsworth—which Stephenson says characterizes his project with Lansing as one amounting to "deceit," *see* [254] at 65—suffers from the same problem. That statement is as follows:

> In the deal [Lansing] was presenting to you [Wadsworth] . . . , he had imputed a $285K value on my interest . . . . He neglected to tell you about the Apogee deal, which would generate $2MM in cash annually . . . , all of it net profit. Your 1/3 interest in the buyout fund, of which you would have paid $95K . . . , would have generated $330K annually, just from Apogee. Maybe that's just "shrewd business practice" in your world. In my world it's called deceit, and I would want nothing to do with that individual . . . once I learned he had done such a thing without proper disclosure.

[254-1] at 15. Here again, Carroll is accusing Lansing, not Stephenson, of acting inappropriately—in this instance, by lying to (and thus "deceiving") others about the true value of Carroll's shares in the real-estate business.

Stephenson argues that the comment necessarily concerns him, and so paints him as a liar and a deceitful person, because the impact on share values that Lansing supposedly concealed from Wadsworth stemmed, as Carroll states in his message, from the Apogee deal—and in his counterclaim against Stephenson, Carroll refers to the Apogee deal as the "Stephenson/Apogee" project. *See* [262] at 9. As already noted, however, Stephenson cannot point to extrinsic facts—including the pleadings in the present litigation—to establish that a given statement impliedly refers to him or his conduct and is therefore actionable *per se*. And even if Wadsworth (the recipient of Carroll's message in this instance) otherwise knew that the Apogee deal involved Stephenson, still the message could not reasonably be read as defaming Stephenson on its face. The "deceitful" conduct described in Carroll's statement is *Lansing's* deliberate failure to notify others about the likely impact the Apogee deal would have on the partners' business. *See* [254-1] at 15 ("In the deal [Lansing] was presenting to you . . . , he had imputed a $285K value on my interest . . . . *He* neglected to tell you about the Apogee deal . . . .") (emphasis added); *id.* ("I would want nothing to do with that individual . . . once I learned that *he* had done such a thing . . . .") (emphasis added). Nothing in the statement indicates that Stephenson had any obligation to disclose information about Apogee to Wadsworth (or anyone else), or that, by neglecting to do so, he somehow participated in the

"deceit" of which Carroll complains. The natural and obvious interpretation of Carroll's comment is that he is criticizing only one person's behavior, and that person is Lansing. Thus, this comment, too, fails to support Stephenson's claim of defamation *per se*.

Stephenson argues in the alternative that because he alleges in his counterclaim that the above statement is "of or concerning" him, the court must accept that allegation as true. *See* [262] at 9. This argument is unpersuasive. In Illinois, whether a given statement refers to the plaintiff under the innocent-construction rule is a question of law, not fact. And the court must accept as true only well-pleaded *factual* allegations; a "legal conclusion couched as a factual allegation" is not entitled to any deference. *Beyrer*, 722 F.3d at 946 (quoting *Iqbal*, 556 U.S. at 678). Moreover, even if Stephenson's allegation (that the comment concerns him) were a factual one, it need not be accepted as true where, as here, the allegation is contradicted by exhibits attached to the complaint. *See Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010) ("[T]he exhibits trump the allegations." (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998))). The e-mail message Stephenson attached to his counterclaim makes clear that the comments in that message are about Lansing, not Stephenson. This is enough to overcome Stephenson's allegation to the contrary.

The next statement underlying Stephenson's defamation claim does refer to him, but it suffers from other issues. In this statement, Carroll commented to Jack Humphreville, another investor:

> Stephenson appears to be the type that likes to control things. I wouldn't be surprised if they eventually thought they could squeeze Lansing out.

[254-1] at 23. The comment is clearly about Stephenson, but it is not obviously harmful to his reputation—or obviously prejudicial to him in his profession or business[4]—such that it is actionable *per se*. To be actionable *per se* in the profession-or-business category, typically a statement must "relate[] to job performance." *Madison*, 539 F.3d at 656 (citing *Cody v. Harris*, 409 F.3d 853, 856–57 (7th Cir. 2005)). "[A]ttacks related to personal integrity and character" are usually insufficient. *Id.* (An attack on the plaintiff's integrity could in some cases constitute defamation *per se* if personal integrity is sufficiently "intertwined with job skills," *id.* (citing *Kumaran v. Brotman*, 247 Ill.App.3d 216, 617 N.E.2d 191, 199 (1993)); but Stephenson does not explain why this exception would apply here.) Carroll's comment that Stephenson likes to control things does not, on its face, suggest any ineptitude on Stephenson's part, or any inability to perform his job.

But even if Stephenson could state a claim for defamation *per se* based on an attack of his personal integrity, the statement here still would not support such a claim. To have integrity means that you are "honest and fair." *See* Merriam-Webster

---

[4] Stephenson's counterclaim is silent on what his business or profession actually is. One of the exhibits to his counterclaim reasonably suggests that Stephenson's family, at least, is in the business of managing certain forms of intellectual property and conducting investment research for select companies. *See* December 10, 2010 E-mail from George Carroll to Jack Humphreville, [254-1] at 2 (stating that Rising Tide (www.risingtide.ch) is owned by the Stephensons); http://www.risingtide.ch/about.php (describing services provided by Rising Tide) (last visited June 29, 2015). But it is unclear from Stephenson's counterclaim whether Stephenson himself is actually involved in this business, and if so, to what extent. Indeed, Carroll's e-mail also suggests that Stephenson may not be involved in the company's day-to-day operations. *See* [254-1] at 2.

Online Dictionary, http://www.merriam-webster.com/dictionary/integrity (last visited June 29, 2015). To say that someone is controlling, however, does not imply that he is either *dis*honest or *un*fair. Such qualities are not inherently linked. Carroll's statement is readily capable of an innocent, non-defamatory interpretation, and so is not actionable *per se*.[5]

The final statement that Stephenson says fits within the profession-or-business category is Carroll's comment to Wadsworth that members of the Stephenson family are "unsavory" people. In a January 11, 2011 e-mail to Wadsworth, Carroll stated:

> I will meet with [Lansing] . . . tomorrow . . . to discuss some possible solutions that will a) save his reputation; b) facilitate the transfer; c) reduce the likelihood of him roaming the streets of Lake Forest with his worldly possessions in a grocery cart; d) allow me to get rid of and him [*sic*] to take advantage of the unsavory Stephenson people . . . .

[254-1] at 21. Stephenson argues that this comment, too, impugns his business reputation and so is defamatory *per se*. Whether the comment fits within any of the five recognized *per-se* categories is ultimately irrelevant, however, because it is a non-actionable statement of opinion.

---

[5] *Kolegas v. Heftel Broadcasting Corp.*, on which Stephenson relies, is distinguishable. In that case, the plaintiff (Kolegas) was in the business of producing and promoting classic cartoon festivals. 154 Ill.2d 1, 11 (1992). After Kolegas called into a radio program to promote his upcoming show, the hosts of the program stated (on the air) that Kolegas was "scamming" them, and that there was no such festival. *See id.* at 11–12. The Illinois Supreme Court concluded that these comments implied Kolegas was lying to the public about the festival, and so the comments "could be found to have damaged [his] integrity and to have prejudiced him in his business of promoting and promoting classic cartoon festivals." *Id.* at 12. Here, by contrast (and as explained above), there is no suggestion from Carroll's statement that Stephenson lied or is dishonest. Thus, unlike in Kolegas, "there is a reasonable innocent construction" for Carroll's statement that "remove[s that] statement from the defamatory *per se* category," *id.*

The First Amendment protects from defamation liability those who make statements of opinion—that is, comments "that cannot 'reasonably [be] interpreted as stating actual facts.'" *Madison*, 539 F.3d at 654 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)); *see also Bryson*, 174 Ill.2d at 100 (citing, *inter alia*, *Milkovich*, 497 U.S. at 20).[6] To determine whether a given statement is one of fact or opinion, Illinois courts generally rely on three criteria: (1) whether the statement has a precise and readily understood meaning; (2) whether the statement is verifiable; and (3) whether its literary or social context signals that it has factual content. *Madison*, 539 F.3d at 654 (citing *J. Maki Constr. Co. v. Chicago Reg'l Council of Carpenters*, 379 Ill.App.3d 189, 882 N.E.2d 1173, 1183 (2008)); *see also Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill.2d 381, 398 (2008)

---

[6] In *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, the Illinois Supreme Court explained that the First Amendment protection had been applied only in three types of defamation actions: those brought by public officials, those brought by public figures, and those brought by private individuals against media defendants. 227 Ill.2d 381, 398–99 (2008) (citation omitted). The court left open the question of whether the protection may apply in cases such as this one, where a private individual has sued another private individual. *See id.* at 400. The Illinois Court of Appeals, however, has since extended the doctrine to a private person's claim against a non-media defendant, observing that it makes sense to do so because a uniform approach reduces ambiguity, and ambiguity "can otherwise foster . . . self-censorship and inhibit the free flow of protected expression." *Stone v. Paddock Publ'ns, Inc.*, 961 N.E.2d 380, 392 (Ill. App. Ct. 2011) (discussing *Imperial Apparel*, 227 Ill.2d at 400); *see also id.* ("We are persuaded by the policies set forth by the supreme court that this requirement should not be limited by the status of the speaker or the person being spoken about.").

It makes sense to apply the protection in all types of defamation cases for another reason. To prevail on a defamation claim in Illinois, the plaintiff—regardless of status—must prove that the defendant "made a *false* statement concerning [him]." *Madison*, 539 F.3d at 653 (citing *Seith*, 861 N.E.2d at 1126) (emphasis added); *Solaia Technology*, 221 Ill.2d at 579. And only statements of fact—not those of opinion—are capable of being proven true or false. *See Coghlan v. Beck*, 984 N.E.2d 132, 145 (Ill. App. Ct. 2013) (citing *Moriarty v. Greene*, 315 Ill.App.3d 225, 233 (2000)).

(citing *Solaia Technology*, 221 Ill.2d at 581). Whether a statement is one of fact or opinion is a question of law. *Madison*, 539 F.3d at 654 (citation omitted).

Under these criteria, Carroll's comment that the Stephensons are "unsavory" is a statement of opinion. While the term "unsavory" may be readily understood as meaning unpleasant or distasteful, these are concepts with no inherent boundaries. What is unpleasant and thus "unsavory" to some may be perfectly acceptable to others. The scope of Carroll's phrasing is thus too far-reaching, and therefore too imprecise, to "contain objectively verifiable factual assertions" that support a defamation claim. *Lifton v. Bd. of Educ. of the City of Chicago*, 416 F.3d 571, 578–79 (7th Cir. 2005) (concluding that references to the plaintiff as "lazy" and "unstable" were non-actionable opinions); *accord Hopewell v. Vitullo*, 299 Ill.App.3d 513, 519 (1998) ("Regardless of the fact that 'incompetent' is an easily understood term, its broad scope renders it [imprecise]; one person's idea of when one reaches the threshold of incompetence will vary from the next person's."); *Horrell v. Merrill Lynch, Pierce, Fenner, & Smith Inc.*, No. 03 C 4996, 2006 WL 2735448, at *6 (N.D. Ill. Sep. 22, 2006) ("[The] statement that 'Mike Horrell and his work associates were dirty people' . . . is the sort of name-calling not actionable under Illinois law . . . ."). Carroll's reference to the Stephensons as "unsavory" is therefore non-actionable.

## B. Imputation of a Criminal Offense

Stephenson argues that the remainder of Carroll's statements are defamatory *per se* because they accuse Stephenson of committing a crime. *See* [262] at 14. Words that impute the commission of a criminal offense are considered

defamatory *per se*. *See Bryson*, 174 Ill.2d at 88 (citation omitted). Although the words need not meet the technical requirements necessary for an indictment, they must "fairly impute the commission of a crime"—specifically, an indictable one, "involving moral turpitude and punishable by death or imprisonment." *Kapotas v. Better Gov't Assoc.*, 30 N.E.3d 572, 590 (Ill. App. Ct. 2015) (citation omitted); *see also Moore v. People for the Ethical Treatment of Animals, Inc.*, 402 Ill.App.3d 62, 69 (2010) (citations omitted).

Stephenson first contends that Carroll imputed to Stephenson the commission of a crime when Carroll wrote to Wadsworth:

> Steve Graver at Graver Capital Management . . . brought us the Stephensons, and then terminated the relationship after he found out they were crooks.

[254-1] at 5. The innocent-construction rule is used to determine whether a statement imputes a criminal offense. *See Moore*, 402 Ill.App.3d at 70 (citing *Kirchner v. Greene*, 294 Ill.App.3d 672, 680 (1998)). Under that rule, a term is not actionable as defamation *per se* if, in common usage, it has a broader, non-criminal meaning. *See Kapotas*, 30 N.E.3d at 590; *Moore*, 402 Ill.App.3d at 70 (quoting *Kirchner*, 294 Ill.App.3d at 680). Such is the case here. As Stephenson points out, the word "crook" commonly denotes a variety of things—some of which imply criminal activity, *see* [262] at 7 n. 1 (noting that "crook" can mean "a criminal" or "a person who engages in fraudulent or criminal practices" (citing Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/crook)), and some of which do not, *see id.* (noting that "crook" may also mean "a dishonest person"); *see*

*also id.* at 7 (arguing that calling someone a crook "impugns [his] reputation by conveying that he is . . . guilty of some sort of financial crime" *or* by conveying "that he is a liar"). Because in common usage the term "crook" may suggest mere dishonesty, Carroll's statement here does not obviously impute the commission of a crime—and so is not, as a result, actionable *per se*.

Indeed, Carroll's statement about the Stephensons being "crooks" is not actionable at all, because it is a statement of opinion. The scope of the term "crook," as just explained, is quite broad. And unless the term is used in a specific factual context that lends it a more precise meaning, calling someone a "crook" does not offer any objectively verifiable information that can support a claim for defamation. *Dubinsky*, 303 Ill.App.3d at 329–30. The context of Carroll's comment here does not provide the necessary factual boundaries, and the precise meaning of his statement remains ambiguous. As such, his general reference to the Stephensons as "crooks" is non-actionable.

Stephenson next argues that another comment by Carroll—this one to Jack Humphreville—also imputes to Stephenson the commission of a crime and is therefore actionable *per se*. But the statement to Humphreville, like the statement just discussed, is too vague to support on its face a defamation claim.

In a December 2010 e-mail from Humphreville to Carroll, the former asked: "Who are Risng [*sic*] Tide (www.risingtide.ch) and International Capital Investment Company?" [254-1] at 2. Carroll responded:

> Rising Tide (Switzerland) and International Capital (Virgin Islands?) are owned by the Stephenson family, I believe. The patriarch is Richard J. Stephenson. Google him for more information. I don't think he has much role in day-to-day ops, but you can be sure any guy with assets in Switzerland and [the Virgin Islands] has absolutely nothing to hide.

*Id.* Stephenson contends that the last part of this statement—"you can be sure any guy with assets in Switzerland and [the Virgin Islands] has . . . nothing to hide"— insinuates dishonesty, corruption, or "other illicit activities" on Stephenson's part. [262] at 6. Each of these interpretations is reasonable, but therein lies the problem: the meaning of the comment is simply too broad, and therefore too ambiguous, to support a claim for defamation *per se*. There are multiple reasons why one might hold assets abroad—for example, to keep creditors, competitors, relatives, or the government from knowing about them—but not all of them imply criminal activity or, more specifically, criminal activity punishable by imprisonment. In context, Carroll's comment could reasonably be understood as suggesting merely that Stephenson is a sketchy person who ought not to be trusted. Stephenson himself appears to recognize as much, since he argues that Carroll's statement plausibly implies illicit conduct *or* dishonesty. *See id.*

Illinois courts have repeatedly observed that, to be actionable as defamation *per se* (in the commission-of-a-crime category), a statement must directly or expressly accuse the plaintiff of committing a specific crime. *See Dubinsky*, 303 Ill.App.3d at 327 (requiring direct accusation of a crime); *Kapotas*, 30 N.E.3d at 590 (requiring an express accusation); *Coghlan v. Beck*, 984 N.E.2d 132, 148 (Ill. App. Ct. 2013) (observing that a statement would be actionable as defamation *per se* if it

imputed the commission of "a specific crime") (citation omitted); *Makis v. Area Publ'ns Corp.*, 77 Ill.App.3d 452, 458 (1979) (explaining that a suggestion of criminal conduct is merely hypothetical—and so not actionable *per se*—where it "does not impute any act or specific criminal conduct to [the] plaintiff") (citation omitted). Carroll's statement does not do this. His reference to Stephenson as "hiding" something does not present an actual violation of the law, and so is not defamatory *per se*. *See Dubinsky*, 303 Ill.App.3d at 328.

The meaning of Carroll's statement is also too vague for the statement to constitute a provably false assertion of fact. Stephenson argues that the statement is verifiable (and verifiably false) because one can determine as a matter of fact that Stephenson has never been convicted of a felony or, more specifically, of having committed a financial crime. *See* [262] at 6. Whether Stephenson was *convicted* of a particular crime has no bearing on whether he may have committed one—and so cannot prove as true or false any accusation that he has done so. But this is neither here nor there because, as noted above, it is not sufficiently evident from the context of Carroll's statement that he is even accusing Stephenson of a crime at all. The statement is not objectively verifiable because its meaning is too imprecise.

To a certain extent, all opinions imply some facts; but whether a statement of opinion is actionable is a question of degree: "the vaguer and more generalized the opinion, the more likely [it] is nonactionable as a matter of law." *Wynne v. Loyola Univ. of Chicago*, 318 Ill.App.3d 443, 452 (2000) (citing *Hopewell*, 299 Ill.App.3d at

521). Carroll's statement here is ambiguous enough that it falls on the non-actionable side of the line.

## C.  Additional Statements About Lansing

In the second part of his counterclaim, Stephenson includes a series of statements by Carroll that Stephenson says falsely accuse Lansing—not Stephenson—of fraud. *See* [254] at 66 ¶¶ 31(a)–(g). Stephenson argues that, even though these statements are concededly about Lansing, they can still support the former's defamation claim when considered in the larger context of the parties' legal dispute and Carroll's own allegations (of aiding and abetting Lansing's fiduciary breach) against Stephenson. *See* [262] at 11.

As already explained, Stephenson cannot properly rely on facts extrinsic to the communications at issue to demonstrate that certain of their statements are indeed about Stephenson and thus are defamatory *per se* as to him. If a statement is not obviously about Stephenson, it cannot be so obviously harmful to him that his injury may be presumed. Such a statement is not defamatory *per se*, but defamatory *per quod. See Madison*, 539 F.3d at 653; *see also Solaia Technology*, 221 Ill.2d at 580 ("If . . . the statement may . . . reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*." (quoting *Chapski v. Copley Press*, 92 Ill.2d 344, 352 (1982))) (internal brackets omitted). When read in their appropriate context, the statements in paragraph 31 of Stephenson's counterclaim are about Lansing; none is obviously about Stephenson. Consequently, they cannot support Stephenson's claim for defamation *per se*.

## IV.    Conclusion

For the reasons discussed above, Carroll's motion to dismiss Stephenson's counterclaim for defamation, [246], is granted. Because Carroll's comments are not actionable *per se*, Stephenson's claim must fail because he has not pleaded the special damages necessary to maintain a claim for defamation *per quod*.

ENTER:

Manish S. Shah
United States District Judge

Date:  6/29/15